Mark Bettilyon, Utah Bar No. 4798
Peter M. de Jonge, Utah Bar No. 7185
Jed H. Hansen, Utah Bar No. 10679
Joshua T. Gray, Utah Bar No. 20218
THORPE NORTH & WESTERN, LLP
The Walker Center
175 S. Main Street, Suite 900
Salt Lake City, Utah 84111

*Attorneys for Plaintiff,*
*Connor Sport Court International, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CONNOR SPORT COURT INTERNATIONAL, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>HELFERS LAWN AND LANDSCAPE LLC, a Missouri Limited Liability Company; SPORT COURT MIDWEST ST. LOUIS, LLC, a Missouri Limited Liability Company; COURT BUILDERS OF ST. LOUIS, LLC, a Missouri Limited Liability Company; AUSTIN HELFERS, a Missouri Resident; DIONNA HELFERS, a Missouri Resident,<br><br>Defendants. | Case No. 2:26-cv-00425<br><br><br>**COMPLAINT**<br>**WITH JURY DEMAND** |

## COMPLAINT

Plaintiff Connor Sport Court International, LLC ("CSCI"), by and through its counsel,

hereby files this Complaint with Jury Demand against Defendants Helfers Lawn and Landscape

1

LLC ("Helfers Lawn"), Sport Court Midwest St. Louis, LLC ("SC Midwest"), Court Builders of St. Louis, LLC ("CB St. Louis"), Austin Helfers ("Mr. Helfers"), Dionna Helfers ("Ms. Helfers"), and alleges as follows:

## NATURE OF THE ACTION

1.      CSCI brings this action for trademark infringement and cybersquatting under the Lanham Trademark Act, Title 15, United States Code § 1051, *et seq.*, and for breach of contract and conversion under the laws of the State of Utah.

2.      This action is related to a co-pending lawsuit in the District Court of Utah which has been assigned Case No. 2:25-cv-01048-HCN-DBP and involves numerous different defendants and plaintiffs.  CSCI and Helfers Lawn are both parties to that action. That action involves distinct factual circumstances and a broad range of legal and evidentiary issues that are tangentially related to the dispute presented in this Complaint.  Joinder would unnecessarily complicate the proceedings, expand discovery, delay resolution of the existing case, and risk confusing the trier of fact.

## PARTIES

3.      CSCI is a Delaware limited liability company and maintains a principal place of business at 5445 W. Harold Gatty Drive, Salt Lake City, Utah 84116. CSCI has contracted independent distributors, dealers, and installers to sell its athletic flooring products and services nationally across the United States, including within this judicial district.

4.      Helfers Lawn is a Missouri limited liability company having a principal place of business at 343 Great Oaks Dr., Labadie, Missouri 63055. Helfers Lawn does business under the names "Sport Court St. Louis" and "Sport Court Midwest St. Louis" and operates the website

located at the URL https://www.sportcourtstlouis.com/. Helfers Lawn is owned and operated by Mr. Helfers and Ms. Helfers.

5.      Helfers Lawn is a former dealer of CSCI that is in the business of installing, resurfacing, and maintaining indoor and outdoor athletic surfaces for residential and commercial spaces. Because its agreement with CSCI has been terminated, Helfers Lawn now directly competes with CSCI in the athletic flooring industry.

6.      SC Midwest is a Missouri limited liability company having a principal place of business at 343 Great Oaks Dr., Labadie, Missouri 63055. SC Midwest does business under the names "Sport Court St. Louis" and "Sport Court Midwest St. Louis" and operates the website located at the URL https://www.sportcourtstlouis.com/. SC Midwest is owned and operated by Mr. Helfers and Ms. Helfers.

7.      SC Midwest is a former dealer of CSCI that is in the business of installing, resurfacing, and maintaining indoor and outdoor athletic surfaces for residential and commercial spaces. Because its agreement with CSCI has been terminated, SC Midwest now directly competes with CSCI in the athletic flooring industry.

8.      CB St. Louis is a Missouri limited liability company having a principal place of business at 343 Great Oaks Dr., Labadie, Missouri 63055. CB St. Louis does business under the names "Court Builders St. Louis" and "Court Builders of St. Louis" and operates the website located at the URL https://www.courtbuilders-stl.com/ (together with https://www.sportcourtstlouis.com/, the "Website"). CB St. Louis is owned and operated by Mr. Helfers and Ms. Helfers.

9.      CB St. Louis directly competes with CSCI in the athletic flooring industry.

10. Mr. Helfers is a Missouri resident having an address of 343 Great Oaks Dr., Labadie, Missouri 63055. Mr. Helfers is President of Helfers Lawn, SC Midwest, and CB St. Louis and does business as an individual under the names "Sport Court St. Louis," "Sport Court Midwest St. Louis," "Court Builders St. Louis," and "Court Builders of St. Louis." Mr. Helfers also operates the Website.

11. Mr. Helfers is a former dealer of CSCI that is in the business of installing, resurfacing, and maintaining indoor and outdoor athletic surfaces for residential and commercial spaces. Because his agreement with CSCI has been terminated, Mr. Helfers now directly competes with CSCI in the athletic flooring industry.

12. Ms. Helfers is a Missouri resident having an address of 343 Great Oaks Dr., Labadie, Missouri 63055. Ms. Helfers is an officer of Helfers Lawn, SC Midwest, and CB St. Louis and does business as an individual under the names "Sport Court St. Louis," "Sport Court Midwest St. Louis," "Court Builders St. Louis," and "Court Builders of St. Louis." Ms. Helfers also operates the Website.

13. Ms. Helfers is a former dealer of CSCI that is in the business of installing, resurfacing, and maintaining indoor and outdoor athletic surfaces for residential and commercial spaces. Because her agreement with CSCI has been terminated, Ms. Helfers now directly competes with CSCI in the athletic flooring industry.

14. Together, Helfers Lawn, SC Midwest, CB St. Louis, Mr. Helfers and Ms. Helfers are referred to as "Former Dealer."

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§

4

1331, 1338 and 15 U.S.C. § 1121. This Court also has supplemental subject matter jurisdiction over CSCI's breach of contract and conversion claims under 28 U.S.C. § 1367 because they are so related to the other claims as to be part of the same case or controversy.

16.     This Court has personal jurisdiction over Former Dealer because it has signed a contract with CSCI where it has consented to the jurisdiction and venue of any State or Federal court located in Salt Lake City, Utah.

17.     This Court further has specific personal jurisdiction over Former Dealer because it intentionally engaged in trademark infringement knowing that the harm will be felt by CSCI in Utah. Former Dealer also breached a contract with CSCI knowing that the harm would be felt by CSCI in Utah.

18.     Furthermore, this Court has specific personal jurisdiction over Former Dealer because it has purposefully availed itself of the laws of the State of Utah and benefited from the privilege of conducting business within the State of Utah for years, having contracted with CSCI and deriving substantial revenue from its business contacts with CSCI in this state.

19.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3) because Former Dealer consented to venue in any State or Federal court located in Salt Lake City, Utah in its now terminated agreement with CSCI. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this district. Not only is CSCI, a party to the contracts at issue, located in this venue, but the harms CSCI complains of are felt in Utah.

## GENERAL ALLEGATIONS

### CSCI's Trademarks

20.     CSCI is the owner of nearly 30 registered and unregistered trademarks, including SPORT COURT®, PORTAFLOOR®, LATERAL FORGIVENESS®, MOTORMAT®, SLAMSYSTEM®, WORLD'S LARGEST COURTBUILDER®, SPORTGUARD®, SPORTBASE®, SPORT DECK®, ▆▆®, POWERGAME®, RESPONSE®, CHAMPIONS START HERE®, SPORTGAME®, SPORTGAME PB®, WETTRAXX™, PRIMEPLAY™, DEFENSE™, MAPLE SELECT™, RESPONSE HG™, POWERGAME+™, POWERGAME PLUS™, POWERSLAM™ and COURTBUILDER™. Together, these are the "CSCI Marks."

21.     Since at least as early as 1974, CSCI (and/or its predecessors-in-interest) has used the mark SPORT COURT® in connection with the sale of athletic flooring, athletic accessories, and distribution, dealership, installation, and maintenance services for those products.

22.     For over 50 years, CSCI (and/or its predecessors-in-interest) has marketed and distributed its goods and services nationally, including in the State of Utah, under the mark SPORT COURT®.

23.     Since at least as early as 1981, CSCI (and/or its predecessors-in-interest) has used the mark LATERAL FORGIVENESS® in connection with the sale of athletic flooring.

24.     For over 40 years, CSCI (and/or its predecessors in interest) has similarly marketed and distributed its goods and services nationally, including in the state of Utah, under the mark LATERAL FORGIVENESS®.

25.     Since at least as early as 1995, CSCI (and/or its predecessors-in-interest) has used the mark PORTAFLOOR® in connection with the sale of athletic flooring.

6

26.    For over 31 years, CSCI (and/or its predecessors-in-interest) has similarly marketed and distributed its goods and services nationally, including in the State of Utah, under the mark PORTAFLOOR®.

27.    Since at least as early as 1996, CSCI (and/or its predecessors-in-interest) has used the marks SLAMSYSTEM® and SPORT DECK® in connection with the sale of athletic flooring and related athletic equipment.

28.    For over 30 years, CSCI (and/or its predecessors-in-interest) has similarly marketed and distributed its goods and services nationally, including in the State of Utah, under the marks SLAMSYSTEM® and SPORT DECK®.

29.    Since at least as early as 1998, CSCI (and/or its predecessors-in-interest) has used the marks RESPONSE® and MOTORMAT® in connection with the sale of athletic flooring.

30.    For over 28 years, CSCI (and/or its predecessors-in-interest) has similarly marketed and distributed its goods and services nationally, including in the State of Utah, under the marks RESPONSE® and MOTORMAT®.

31.    Since at least as early as 2005, CSCI (and/or its predecessors-in-interest) has used the mark ▰▰® in connection with the sale of athletic flooring.

32.    For over 21 years, CSCI (and/or its predecessors-in-interest) has similarly marketed and distributed its goods and services nationally, including in the State of Utah, under the mark ▰▰®.

33.    Since at least as early as 2006, CSCI (and/or its predecessors-in-interest) has used the marks POWERGAME® and SPORTGUARD® in connection with the sale of athletic flooring.

34.    For over 20 years, CSCI (and/or its predecessors-in-interest) has similarly marketed

7

and distributed its goods and services nationally, including in the State of Utah, under the marks POWERGAME® and SPORTGUARD®.

35.     Since at least as early as 2008, CSCI (and/or its predecessors-in-interest) has used the marks SPORTGAME® and WORLD'S LARGEST COURTBUILDER® in connection with the sale of athletic flooring.

36.     For over eighteen years, CSCI (and/or its predecessors-in-interest) has similarly marketed and distributed its goods and services nationally, including in the State of Utah, under the marks SPORTGAME® and WORLD'S LARGEST COURTBUILDER®.

37.     Since at least as early as 2010, CSCI (and/or its predecessors-in-interest) has used the mark SPORTBASE® in connection with the sale of athletic flooring.

38.     For over sixteen years, CSCI has similarly marketed and distributed its goods and services nationally, including in the State of Utah, under the mark SPORTBASE®.

39.     Since at least as early as 2016, CSCI (and/or its predecessors-in-interest) has used the mark CHAMPIONS START HERE® in connection with the sale of athletic flooring.

40.     For over nine years, CSCI has similarly marketed and distributed its goods and services nationally, including in the State of Utah, under the mark CHAMPIONS START HERE®.

41.     Since at least as early as 2020, CSCI has used the marks SPORTGAME PB® and POWERSLAM™ in connection with the sale of athletic flooring.

42.     Since at least as early as 2021, CSCI has used the marks DEFENSE™ and RESPONSE HG™ in connection with the sale of athletic flooring.

43.     For over five years, CSCI has similarly marketed and distributed its goods and services nationally, including in the State of Utah, under the marks SPORTGAME PB®,

8

RESPONSE HG™, POWERSLAM™ and DEFENSE™.

44.     Since at least as early as 2022, CSCI has used the marks POWERGAME+™ and POWERGAME PLUS™ in connection with the sale of athletic flooring.

45.     For over four years, CSCI has similarly marketed and distributed its goods and services nationally, including in the State of Utah, under the marks POWERGAME+™ and POWERGAME PLUS™.

46.     Since at least as early as 2023, CSCI has used or intended to use the mark WETTRAXX™ in connection with the sale of athletic flooring.

47.     For over 3 years, CSCI has similarly marketed and distributed its goods and services nationally, including in the State of Utah, under the mark WETTRAXX™.

48.     Since at least as early as 2024, CSCI has used or intended to use the marks MAPLE SELECT™ and PRIMEPLAY™ in connection with the sale of athletic flooring.

49.     For over two years, CSCI (and/or its predecessors-in-interest) has similarly marketed and distributed its goods and services nationally, including in the State of Utah, under the mark MAPLE SELECT™.

50.     Since at least as early as 2025, CSCI has used the mark COURTBUILDER™ in connection with the sale of athletic flooring.

51.     For over one year, CSCI has similarly marketed and distributed its goods and services nationally, including in the State of Utah, under the mark COURTBUILDER™.

52.     CSCI is a leader within the athletic flooring industry and supplies CSCI Marks branded products to many organizations, including, but not limited to the National College Athletic Association (the NCAA) and USA Volleyball.

53.    CSCI has thereby acquired substantial federal and common law trademark rights and goodwill in the CSCI Marks.

54.    CSCI's federal trademark rights include ownership of U.S. Reg. No. 1,100,976 ("the '976 Registration") for the mark SPORT COURT® registered for use in connection with "recreational patio installation services."  This mark has acquired incontestable status under 15 U.S.C. § 1065. Attached as Exhibit A is a copy of the '976 Registration certificate and a printout of its current status on the Trademark Status & Document Retrieval system of the United States Patent and Trademark Office ("TSDR").

55.    CSCI is also the owner of U.S. Reg. No. 1,155,586 ("the '586 Registration") for the mark SPORT COURT® registered for use in connection with "sports equipment-namely, backboards, nets and ball rebounders." This mark has acquired incontestable status under 15 U.S.C. § 1065. Attached as Exhibit B is a copy of the '586 Registration certificate and a printout of its current status on TSDR.

56.    CSCI is also the owner of U.S. Reg. No. 1,727,818 ("the '818 Registration") for the mark SPORT COURT® registered for use in connection with "recreational and athletic play surfaces and related equipment for said surfaces; namely, nets, basketball backboards and lighting fixtures sold as a unit."  This mark has acquired incontestable status under 15 U.S.C. § 1065. Attached as Exhibit C is a copy of the '818 Registration certificate and a printout of its current status on TSDR.

57.    CSCI is also the owner of U.S. Reg. No. 2,479,328 ("the '328 Registration") for the mark SPORT COURT® registered for use in connection with "plastic interlocking floor tiles." This mark has acquired incontestable status under 15 U.S.C. § 1065.  Attached as Exhibit D is a

10

copy of the '328 Registration certificate and a printout of its current status on TSDR.

58.    CSCI is also the owner of U.S. Reg. No. 2,374,528 ("the '528 Registration") for the mark LATERAL FORGIVENESS® registered for use in connection with "plastic interlocking floor tiles." This mark has acquired incontestable status under 15 U.S.C. § 1065.  Attached as Exhibit E is a copy of the '528 Registration certificate and a printout of its current status on TSDR.

59.    CSCI is also the owner of U.S. Reg. No. 3,410,563 ("the '563 Registration") for the mark POWERGAME® registered for use in connection with "Non-metal interlocking floor tiles." This mark has acquired incontestable status under 15 U.S.C. § 1065. Attached as Exhibit F is a copy of the '563 Registration certificate and a printout of its current status on TSDR.

60.    CSCI is also the owner of U.S. Reg. No. 7,199,254 ("the '254 Registration") for the mark SPORTGAME® registered for use in connection with "non-metal interlocking floor tiles." Attached as Exhibit G is a copy of the '254 Registration certificate and a printout of its current status on TSDR.

61.    CSCI is also the owner of U.S. Reg. No. 3,363,099 ("the '099 Registration") for the mark ® registered for use in connection with *inter alia*, "non-metal interlocking floor tiles;" "recreational and athletic play surfaces, namely, athletic flooring;" "recreational and athletic play equipment;" and "recreational patio installation services."  This mark has acquired incontestable status under 15 U.S.C. § 1065. Attached as Exhibit H is a copy of the '099 Registration certificate and a printout of its current status on TSDR.

62.    CSCI is also the owner of U.S. Reg. No. 2,002,892 ("the '892 Registration") for the mark PORTAFLOOR® registered for use in connection with "plastic tile treads in the nature of portable roll out flooring for use on indoor and outdoor ground surfaces" and "hard surface

11

coverings for floors." This mark has acquired incontestable status under 15 U.S.C. § 1065. Attached as Exhibit I is a copy of the '892 Registration certificate and a printout of its current status on TSDR.

63.    CSCI is also the owner of U.S. Reg. No. 2,544,253 ("the '253 Registration") for the mark MOTORMAT® registered for use in connection with "synthetic hard surface coverings for floors, namely, vehicular, sports of multi-purpose flooring made of high impact polypropylene copolymer." This mark has acquired incontestable status under 15 U.S.C. § 1065.  Attached as Exhibit J is a copy of the '253 Registration certificate and a printout of its current status on TSDR.

64.    CSCI is also the owner of U.S. Reg. No. 3,499,442 ("the '442 Registration") for the mark SLAMSYSTEM® registered for use in connection with "sports equipment." This mark has acquired incontestable status under 15 U.S.C. § 1065.  Attached as Exhibit K is a copy of the '442 Registration certificate and a printout of its current status on TSDR.

65.    CSCI is also the owner of U.S. Reg. No. 3,690,823 ("the '823 Registration") for the mark WORLD'S LARGEST COURTBUILDER®, registered for use in connection with "interlocking non-metal floor tile." Attached as Exhibit L is a copy of the '823 Registration certificate and a printout of its current status on TSDR.

66.    CSCI is also the owner of U.S. Reg. No. 4,023,327 ("the '327 Registration") for the mark SPORTGUARD® registered for use in connection with "non-metal modular tile flooring." This mark has acquired incontestable status under 15 U.S.C. § 1065.  Attached as Exhibit M is a copy of the '327 Registration certificate and a printout of its current status on TSDR.

67.    CSCI is also the owner of U.S. Reg. No. 4,026,768 ("the '768 Registration") for the mark SPORTBASE® registered for use in connection with "non-metal floor tiles, non-metal

floor panels, and non-metal floors and subfloors." This mark has acquired incontestable status under 15 U.S.C. § 1065. Attached as Exhibit N is a copy of the '768 Registration certificate and a printout of its current status on TSDR.

68.    CSCI is also the owner of U.S. Reg. No. 3,330,404 ("the '404 Registration") for the mark SPORT DECK® registered for use in connection with "interlocking floor tiles for use as athletic and recreational play surfaces." This mark has acquired incontestable status under 15 U.S.C. § 1065. Attached as Exhibit O is a copy of the '404 Registration certificate and a printout of its current status on TSDR.

69.    CSCI is also the owner of U.S. Reg. No. 3,349,948 ("the '948 Registration") for the mark RESPONSE® registered for use in connection with "interlocking non-metal floor tiles for athletic and recreational purposes." This mark has acquired incontestable status under 15 U.S.C. § 1065. Attached as Exhibit P is a copy of the '948 Registration certificate and a printout of its current status on TSDR.

70.    CSCI is also the owner of U.S. Reg. No. 5,167,853 ("the '853 Registration") for the mark CHAMPIONS START HERE® registered for use in connection with "Recreational and athletic play surfaces, namely, non-metal interlocking floor tiles." This mark has acquired incontestable status under 15 U.S.C. § 1065. Attached as Exhibit Q is a copy of the '853 Registration certificate and a printout of its current status on TSDR.

71.    CSCI is also the owner of U.S. Reg. No. 7,283,274 ("the '274 Registration") for the mark SPORTGAME PB® registered for use in connection with "non-metal interlocking floor tiles." Attached as Exhibit R is a copy of the '274 Registration certificate and a printout of its current status on TSDR.

13

72.    CSCI is also the owner of U.S. Application No. 98/000772 ("the '772 Application") for the mark WETTRAXX$^{TM}$ applied for use in connection with "non-metal interlocking floor tiles." Attached as Exhibit S is a printout of the '772 Application's current status on TSDR.

73.    CSCI is also the owner of U.S. Trademark Application No. 98/490673 ("the '673 Application") for the mark PRIMEPLAY$^{TM}$ applied for use in connection with "non-metal interlocking floor tiles; non-metal sport tiles." Attached as Exhibit T is a printout of the '673 Application's current status on TSDR.

74.    As a result of CSCI's long and extensive use of the CSCI Marks, the CSCI Marks have become well-known as indicators of high-quality athletic flooring and related services.

75.    The CSCI Marks have acquired significant goodwill and are assets of enormous value.

76.    Through CSCI's promotion and advertising under the CSCI Marks, the public has come to recognize the CSCI Marks as originating from CSCI.

77.    The CSCI Marks are distinctive when used in connection with CSCI's goods and services.

### THE DEALER SALES/MARKETING AND LICENSING AGREEMENT

78.    To better market and sell its products under the CSCI Marks, CSCI enters into sales and marketing agreements with distributors and dealers. These agreements allow the distributors or dealers to act as CSCI's designated distributor or dealer for a particular geographic area and to benefit from the goodwill associated with the CSCI Marks. In exchange for this opportunity, the dealers and distributors must meet certain performance thresholds and CSCI's brand standards.

79.    On May 15, 2013, CSCI and Former Dealer entered into one such agreement, the

Dealer Sales/Marketing and Licensing Agreement (the "Agreement").

80.    Since entering into the Agreement, Former Dealer has enjoyed the benefits of, and profited from, the goodwill associated with the CSCI Marks.

81.    The Agreement required Former Dealer to purchase Sport Court® branded products only from CSCI. Former Dealer was also required to adhere to CSCI's brand standards. Under the CSCI brand standards, Former Dealer could only buy and sell genuine CSCI products acquired directly from CSCI. Former Dealer was not allowed to sell acrylic court coatings or other competitive products, including those sold by other athletic flooring companies, like Tarkett Sports, in connection with the CSCI Marks. Any use of the CSCI Marks had to comply with the CSCI brand standards.

82.    Upon the termination of its Agreement with CSCI, Former Dealer is contractually required to, amongst other obligations, return all photographs, advertising, promotional materials, customer lists and leads, and other materials obtained from CSCI; forever cease to hold itself out as, or promote itself as, formerly associated with CSCI; cease and desist any further use of the CSCI Marks and all other means of identification relating to CSCI and CSCI products; cease and desist using any intellectual property owned by CSCI; and cease and desist using any website, internet address, domain name, or metatag that utilizes CSCI's trademarks, logos, or intellectual property owned by, or associated with, CSCI.

83.    Former Dealer further agreed that it would have no further connection with CSCI, CSCI's business, or any rights granted by its Agreement, including any goodwill it may have established with respect to CSCI, upon the termination of its Agreement.

84.    On November 7, 2025, CSCI terminated the Agreement with Former Dealer,

15

reminded Former Dealer of its obligations under the Agreement and stopped supplying Former Dealer with genuine SPORT COURT® branded products and other CSCI products.

85.     Unfortunately, after the Agreement with Former Dealer was terminated, Former Dealer did not cease use of the CSCI Marks.

86.     Instead, on November 17, 2025, Helfers Lawn and 15 other CSCI distributors and dealers jointly filed a lawsuit against CSCI and other related entities. That lawsuit was filed in the District of Utah and is captioned *Custom Courts, Inc. et al. v. Connor Sport Court International, LLC et al.*, Case No. 2:25-cv-01048 ("Distributor Lawsuit"). In the Distributor Lawsuit, Helfers Lawn alleged, among other things, that the Agreement should not have been terminated.

87.     Plaintiffs in the Distributor Lawsuit, including Helfers Lawn, also sought a temporary restraining order and a preliminary injunction ("Injunction Motion"). The Injunction Motion sought to require CSCI to reinstate the Agreement. The Injunction Motion also sought to reinstate six other distributor agreements that CSCI had terminated.

88.     On March 18, 2026, the Court denied the Injunction Motion and held that Helfers Lawn and the other plaintiffs in the Distributor Lawsuit "failed to show that they are likely to establish that they performed their obligations under the contract."

89.     CSCI has waited to file the present lawsuit because until the Court entered its Order on March 18, 2026, there was uncertainty as to whether the Agreement would be reinstated.

## DEFENDANTS' WRONGFUL ACTIONS

90.     Since the Agreement was terminated, Ms. Helfers organized CB St. Louis. Former Dealer's URL https://www.sportcourtstlouis.com/, which incorporates the SPORT COURT® Mark, now redirects to https://www.courtbuilders-stl.com/. At the top of the Website's homepage

16

is the statement "New name, same commitment! Serving Greater StL Since 2011."

91. Because the Agreement has been terminated, Former Dealer is not authorized to use the CSCI Marks.

92. Despite termination of the Agreement with CSCI, Former Dealer continues to use the CSCI Marks in violation of the Lanham Act and the Agreement.

93. Even though Former Dealer no longer has access to genuine SPORT COURT® or other CSCI products, Former Dealer continues to use the CSCI Marks, or marks that are substantially indistinguishable from the CSCI Marks, on the Website, through its domain name www.sportcourtstlouis.com, on social media, and other advertising or marketing materials to advertise its goods and services in multiple states.

94. Former Dealer also continues to violate its Agreement by:

a. Failing to return all customer lists and leads to CSCI.

b. Failing to return all advertising, promotional, and instructional materials to CSCI, and continuing to use photographs depicting CSCI products and/or CSCI Marks.

c. Continuing to hold itself out as a company associated with CSCI.

d. Continuing to use the CSCI Marks to promote its products.

e. Continuing to use intellectual property owned by CSCI.

f. Continuing to use websites, domain names, and metatags, and other intellectual property owned by CSCI, including the domain name www.sportcourtstlouis.com.

95. As noted in the following representative examples, Former Dealer continues to use the CSCI Marks on its Website and in the domain name www.sportcourtstlouis.com. Helfers Lawn also continues to use photographs of CSCI products and otherwise violate the Agreement.

17

Examples of the unlawful uses of the CSCI Marks have been highlighted below:





**Complimentary Service**

## Free Backyard Court Inspection

Our comprehensive free court inspection helps identify any issues with your court before they become major problems. We'll thoroughly examine all components and provide a detailed report.

✓ Remove loose dirt and debris from top surface of the court with a blower
✓ Identify and replace damaged tile and ramp edge (includes up to 6 tiles and 6 ramp edge pieces)
✓ Identify, document and photograph any warranty concerns
✓ Replace basketball hoop net
✓ Wipe basketball hoop backboard
✓ Inspect basketball hoop pole pad
✓ Inspect and perform routine maintenance on basketball hoop actuator
✓ Inspect rebounder netting and replace damaged bungee cords
✓ Inspect rebounder apron and replace damaged zip ties and bungee cords
✓ Inspect ball containment netting
✓ Replace damaged or broken zip ties
✓ Inspect net poles and net adjustment system
✓ Inspect multi-sport nets

📞 Schedule Your Free Inspection





96.     Former Dealer also uses the CSCI Marks throughout the Website in hidden code or metadata.

97.     Former Dealer is also using the SPORT COURT® Mark, SPORTGAME® Mark, and ⊟⊟® Mark on social media, as depicted in the representative examples below.







98.    Former Dealer is offering goods and services highly similar to the types of goods and services offered by CSCI and is using the CSCI Marks to sell these other products.

99.    For example, Former Dealer uses the SPORTGAME® Mark in a February 16,

2026, social media post with the call to action "Tell them to contact Court Builders of St. Louis! Our sport game tiles are safer than concrete surfaces and provide a fast and flat gaming surface for every roll, bounce, pass and rebound in your game."



100.    In another social media post dated March 3, 2026, Former Dealer uses the SPORT COURT® Mark to tell consumers to "Check out our amazing Multi-Sport courts!"



101. As a consequence, Former Dealer is presently using the CSCI Marks to sell products not belonging to CSCI, and products Former Dealer was forbidden from selling when it was an authorized CSCI dealer, such as Tarkett Sports Omnisports® vinyl sports flooring.

102. In view of at least the foregoing, and specifically because Former Dealer was a former licensee of the CSCI Marks, Former Dealer's actions are likely to cause confusion, to cause mistake, or to deceive consumers as to the source of its goods and services and cause a false association between CSCI and Former Dealer.

103. Former Dealer's actions constitute a knowing and willful false designation of origin of its goods and services. Former Dealer knew of CSCI's rights in the CSCI Marks since at least as early as May 2013, when Former Dealer entered into the Agreement. When CSCI terminated the Agreement, CSCI reminded Former Dealer of its obligations under the Agreement to cease all use of the CSCI Marks. Despite this knowledge, Former Dealer continues to use the CSCI Marks throughout the Website and social media. Former Dealer also continues to use the domain name www.sportcourtstlouis.com.

104. Former Dealer's willful misconduct is further evidenced by its continued use of the CSCI Marks even after the Court, in the Distributor Lawsuit, denied Helfers Lawn's request for a preliminary injunction and ruled that Helfers Lawn was unlikely to show that it had performed its obligations under its Agreement with CSCI.

105. Former Dealer's actions have resulted in, and will continue to result in substantial, imminent, and irreparable harm and injury to CSCI and consumers. Additionally, the harm to CSCI from Former Dealer's actions is not fully compensable by money damages. CSCI has suffered and continues to suffer irreparable harm that has no adequate remedy at law and that will continue

22

unless the infringement committed by Former Dealer is permanently enjoined.

## FIRST CAUSE OF ACTION

### TRADEMARK INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARKS - 15 U.S.C. § 1114

106. CSCI realleges and incorporates by reference all of the foregoing paragraphs.

107. CSCI owns the '976 Registration, '586 Registration, '818 Registration, '328 Registration, '254 Registration, '274 Registration, and '099 Registration—all valid United States trademark registrations for the SPORT COURT® Mark, SPORTGAME® Mark, SPORTGAME PB® Mark, and the ▣® Mark—and holds the exclusive rights to market and sell its products and services bearing these CSCI Marks.

108. Former Dealer uses the CSCI Marks and photographs of CSCI products in its marketing and advertising materials, social media, and on the Website, including in the visible text and hidden code.

109. Former Dealer uses the SPORT COURT® Mark in the domain name www.sportcourtstlouis.com to sell Former Dealer's products and services.

110. Former Dealer is not authorized by CSCI to use the CSCI Marks in connection with Former Dealer's goods and services.

111. Former Dealer's actions are likely to cause confusion, to cause mistake, or to deceive consumers and are trademark infringement pursuant to 15 U.S.C. § 1114.

112. Former Dealer's actions were and are deliberate, willful, fraudulent, and constitute a knowing infringement of the CSCI Marks.

113. Former Dealer's infringement of the CSCI Marks has caused and will continue to cause damage and irreparable injury to the value and goodwill of the CSCI Marks, as well as

23

damage and cause irreparable injury to CSCI's goodwill, business, and reputation.

114. Upon information and belief, CSCI is being irreparably damaged by Former Dealer's willful, unauthorized use of the CSCI Marks in the manner set forth above and will continue to be damaged unless Former Dealer is enjoined from using the CSCI Marks or any colorable imitation thereof.

115. CSCI is entitled to injunctive relief under 15 U.S.C. § 1116(a) as there is no adequate remedy at law to fully redress Former Dealer's illegal conduct.

116. In addition to injunctive relief, CSCI is entitled to all actual damages and lost profits that it has sustained in the amount to be determined at trial, including but not limited to three times Former Dealer's profits and gains as a result of its unfair competition described above, attorneys' fees, and the costs of this action pursuant to 15 U.S.C. § 1117.

**SECOND CAUSE OF ACTION**

**FEDERAL FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION - 15 U.S.C. § 1125(a)**

117. CSCI realleges and incorporates by reference all of the foregoing paragraphs.

118. CSCI owns the '976 Registration, '586 Registration, '818 Registration, '328 Registration, '254 Registration, '274 Registration, and '099 Registration—all valid United States trademark registrations for the SPORT COURT® Mark, SPORTGAME® Mark, SPORTGAME PB® Mark, and the ▆▆ ® Mark—and holds the exclusive rights to market and sell its products and services bearing these CSCI Marks.

119. The CSCI Marks have acquired distinctiveness, associating them in the minds of the purchasing public with CSCI and its goods and services.

120. Former Dealer uses the CSCI Marks and photographs of CSCI products in its

marketing and advertising materials, social media, and on the Website, including in the visible text and hidden code.

121.    Former Dealer uses the SPORT COURT® Mark in the domain name www.sportcourtstlouis.com to sell Former Dealer's products and services.

122.    Former Dealer is not authorized by CSCI to use the CSCI Marks or photographs of CSCI products in connection with Former Dealer's goods and services.

123.    Former Dealer's conduct as alleged herein, including its use of the CSCI Marks, constitutes a false designation of origin, sponsorship, affiliation, and/or association of CSCI or the CSCI Marks with Former Dealer and Former Dealer's products and services.

124.    Former Dealer's conduct as alleged herein is willful and is intended to and likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Former Dealer with CSCI, or as to the origin, sponsorship, or approval of Former Dealer's goods, services, or commercial activities by CSCI.

125.    Former Dealer's conduct constitutes false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

126.    Upon information and belief, CSCI is being irreparably damaged by Former Dealer's unfair competition in the manner set forth above and will continue to be damaged unless Former Dealer is enjoined from using the CSCI Marks or any colorable imitation thereof.

127.    CSCI is entitled to injunctive relief under 15 U.S.C. § 1116(a) as there is no adequate remedy at law to fully redress Former Dealer's illegal conduct.

128.    In addition to injunctive relief, CSCI is entitled to all actual damages and lost profits that it has sustained in the amount to be determined at trial, including but not limited to three times

Former Dealer's profits and gains as a result of its unfair competition described above, attorneys' fees, and the costs of this action pursuant to 15 U.S.C. § 1117.

## THIRD CAUSE OF ACTION

### ANTICYBERSQUATTING - 15 U.S.C. § 1125(d)

129.    CSCI realleges and incorporates by reference all of the foregoing paragraphs.

130.    CSCI owns valid United States trademark registrations for the SPORT COURT® Mark, and holds the exclusive rights to market and sell its products and services bearing this trademark.

131.    Upon information and belief, Former Dealer is the registered owner of the domain www.sportcourtstlouis.com.

132.    The domain name www.sportcourtstlouis.com is identical to or confusingly similar to CSCI's SPORT COURT® Mark.

133.    Former Dealer is not authorized to use the SPORT COURT® Mark in commerce.

134.    Following termination of its Agreement with CSCI, Former Dealer has continued to use the domain www.sportcourtstlouis.com to divert internet traffic away from CSCI for Former Dealer's commercial gain.

135.    Former Dealer's acts related to its continued use of the domain name www.sportcourtstlouis.com following termination of its Agreement with CSCI demonstrate a bad faith intent to profit from the SPORT COURT® Mark.

136.    Former Dealer's conduct constitutes cybersquatting in violation of 15 U.S.C. § 1125(d).

137.    Upon information and belief, CSCI is being irreparably damaged by Former

26

Dealer's cybersquatting in the manner set forth above and will continue to be damaged unless Former Dealer is enjoined from using the domain name www.sportcourtstlouis.com.

138.    CSCI is entitled to injunctive relief under 15 U.S.C. § 1116(a) as there is no adequate remedy at law to fully redress Former Dealer's illegal conduct.

139.    In addition to injunctive relief, CSCI is entitled to all actual damages and/or statutory damages, and lost profits that it has sustained in the amount to be determined at trial, including but not limited to three times Former Dealer's profits and gains as a result of its unlawful acts described above, attorneys' fees, and the costs of this action pursuant to 15 U.S.C. § 1117.

140.    CSCI is also entitled to an order requiring Former Dealer to transfer ownership of the domain name www.sportcourtstlouis.com to CSCI.

**FOURTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

141.    CSCI realleges and incorporates by reference all of the foregoing paragraphs.

142.    The Agreement between CSCI and Former Dealer is a valid and enforceable contract.

143.    CSCI terminated the Agreement.

144.    Upon termination of the Agreement, Former Dealer was required to cease all use of the CSCI Marks, among other things.

145.    Former Dealer has breached the Agreement in at least the following ways:

   a.    Failing to pay all sums owed to CSCI.

   b.    Failing to return all customer lists and leads to CSCI.

   c.    Failing to return all advertising, promotional, and instructional materials to

CSCI, and continuing to use photographs depicting CSCI products and/or CSCI Marks.

        d.   Continuing to hold itself out as a company associated with CSCI.

        e.   Continuing to use the CSCI Marks to promote its products.

        f.   Continuing to use intellectual property owned by CSCI.

        g.   Continuing to use websites, domain names, and metatags and other intellectual property owned by CSCI.

146.    Former Dealer's breach has damaged CSCI in amounts to be proven at trial.

147.    CSCI is entitled to injunctive relief to force Former Dealer to comply with its contractual obligations.

148.    CSCI is entitled to recover its attorneys' fees, costs and expenses pursuant to the Agreement.

## FIFTH CAUSE OF ACTION

### CONVERSION

149.    CSCI realleges and incorporates by reference all of the foregoing paragraphs.

150.    CSCI owns valid United States trademark registrations for the SPORT COURT® Mark, and holds the exclusive rights to market and sell its products and services bearing this trademark.

151.    Upon information and belief, Former Dealer is the registered owner of the domain www.sportcourtstlouis.com.

152.    Following termination of its Agreement with CSCI, Former Dealer has continued to use the domain www.sportcourtstlouis.com to divert internet traffic away from CSCI for Former Dealer's commercial gain, preventing CSCI from the use and benefit of that domain name.

153.    Upon termination of the Agreement with Former Dealer, CSCI sent a demand to Former Dealer requiring cessation of use and the return of intellectual property to CSCI, but Former Dealer has refused to do so.  As a result, CSCI cannot access or control the domain name or any webpage associated with www.sportcourtstlouis.com.

154.    Former Dealer has thus deprived CSCI of the use and possession of www.sportcourtstlouis.com and all the rights and benefits associated with that domain name to the detriment of CSCI.

155.    Former Dealer is thus liable to CSCI for conversion of the domain name www.sportcourtstlouis.com in an amount to be proven at trial.

156.    CSCI is entitled to an injunction requiring Former Dealer to transfer ownership of the domain name www.sportcourtstlouis.com to CSCI.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter a judgment in favor of CSCI as follows:

A.    That the Court enter judgment that Former Dealer's use of the CSCI Marks is likely to cause confusion resulting in trademark infringement in violation of 15 U.S.C. §§ 1114 and 1125;

B.    That the Court enter judgment that Former Dealer's actions constitute false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A);

C.    That the Court enter judgment that Former Dealer's bad faith use of the domain name www.sportcourtstlouis.com after termination of the Agreement is a violation of 15 U.S.C. § 1125(d);

D.    That the Court enter judgment that Former Dealer's actions constitute a breach of

the Agreement;

E.      That the Court enter judgment that Former Dealer's failure to transfer the domain name www.sportcourtstlouis.com constitutes conversion;

F.      That the Court preliminarily and permanently enjoin Former Dealer from using the CSCI Marks, including, but without limitation, the terms "sport court," "sports court," "sport courts," "multi-sport court," "multi-sports court," "sport game," or any term that infringes or is a colorable imitation of the CSCI Marks, or unfairly competes with CSCI;

G.      That the Court require Former Dealer to sanitize its online presence, removing any and all infringement of the CSCI Marks from the visible text and hidden code on the Website, advertising, or social media and otherwise require Former Dealer to comply with the Agreement;

H.      That Former Dealer fully comply with its obligations under the Agreement, including by: returning all customer lists and leads, advertising and promotion materials to CSCI, including returning all promotional photographs of CSCI products; ceasing to hold itself out as being associated with CSCI; ceasing all use of CSCI's Marks; ceasing all use of CSCI's intellectual property; ceasing use of all addresses, domain names, HTML, or metatags associated with CSCI; and transferring the domain name www.sportcourtstlouis.com to CSCI;

I.      That the Court order such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that the products and services sold and promoted by Former Dealer are authorized by CSCI or related in any way to CSCI's goods or services and to provide CSCI with access to and control over digital assets associated with the CSCI Marks;

J.      That the Court enter judgment ordering Former Dealer to provide CSCI with a full

and complete accounting of all products sold and profits gained in connection with its infringing activities;

K.      That the Court enter judgment that CSCI recover from Former Dealer damages in an amount to be proven at trial, including general, special, actual, and/or statutory damages pursuant to 15 U.S.C. § 1117. Pursuant to 15 U.S.C. § 1117, the amounts should include CSCI's damages and Former Dealer's profits, if any, trebled pursuant to 15 U.S.C. § 1117(b), or alternatively, enhanced statutory damages pursuant to 15 U.S.C. § 1117(c), for Former Dealer's willful violations of the CSCI Marks or statutory damages for cybersquatting pursuant to 15 U.S.C. § 1117(d);

L.      That the Court require Former Dealer to pay prejudgment and post-judgment interest until such awards are paid;

M.      That the Court require Former Dealer to pay CSCI's costs, expenses and attorneys' fees incurred in this action;

N.      That the Court require Former Dealer to engage in corrective advertising; and

O.      That the Court order such other and further relief for CSCI as shall seem just and proper to the Court.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, CSCI hereby demands a jury trial on all claims and issues so triable.

DATED this 13th day of May, 2026.

Respectfully Submitted,

*/s/ Mark Bettilyon*
**THORPE NORTH & WESTERN, LLP**
Mark Bettilyon, Utah Bar No. 4798
Peter M. de Jonge, Utah Bar No. 7185
Jed H. Hansen, Utah Bar No. 10679
Joshua T. Gray, Utah Bar No. 20218
175 S. Main Street, Suite 900
Salt Lake City, Utah 84111

*Attorneys for Plaintiff,*
*Connor Sport Court International, LLC*